[No. G030498. Fourth Dist., Div. Three. Apr. 19, 2002.]

NICK JESSON, Plaintiff and Appellant, v.
GRAY DAVIS, as Governor, etc., et al., Defendants and Respondents.

## COUNSEL

Nick Jesson, in pro. per., for Plaintiff and Appellant.

Remcho, Johansen & Purcell and Thomas A. Willis for Defendant and Respondent Gray Davis.

Sweeney & Grant and Eric Grant for Defendant and Respondent Bill Simon.

Edie Bukewihge, in pro. per., for Defendant and Respondent Edie Bukewihge.

## OPINION

**SILLS, P. J.**—On March 5, 2002, California voters marched to the polls to participate in their biannual rite of electoral passage, the state's primary

election. The incumbent Governor Gray Davis won his party's nomination with 1,589,113 votes and Bill Simon won the Republican Party nomination with a count of 1,012,428. The appellant in this case, one Nick Jesson, was also seeking the Republican nomination and drew a mere 17,281 votes statewide.

After the election, Jesson filed this election contest, asking the Orange County Superior Court to enjoin the Secretary of State from certifying the results. The trial court declined the invitation to throw the California gubernatorial race into utter chaos and prudently denied relief, dismissing Jesson's election contest. Jesson then filed this "petition for writ of mandate/appeal," which this court has ordered be treated as an appeal.[1] Inasmuch as Elections Code section 16920 requires us to give precedence to election contest appeals "over all other appeals," we calendared it for argument within 10 days of its filing.

The basis of Jesson's election contest is this: The California Constitution provides that an oath be taken by every public official before entering upon the duties of his or her office. The oath is set forth in the footnote below.[2]

[1]Judgments after election contests, with the exception of primary elections involving a recount, are appealable under sections 16900 and 16920 of the Elections Code. As of this writing, however, there is only a minute order dismissing Jesson's election contest, no formal judgment. However, if there is ever a situation where, for the sake of expediting an otherwise appealable decision, an appellate court should deem a minute order to incorporate a judgment of dismissal (e.g., *Beazell v. Schrader* (1963) 59 Cal.2d 577, 579-580 [30 Cal.Rptr. 534, 381 P.2d 390]; *Francis v. Dun & Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 539 [4 Cal.Rptr.2d 361]), it is an election contest. Elections Code section 16920 gives an appellant only 10 days to perfect an appeal from a judgment "pronounced" by the superior court, so there is no time for haggling over the wording of a formal judgment. We therefore deem the minute order to incorporate a judgment dismissing Jesson's contest, and treat the instant challenge as a perfected appeal under Elections Code section 16920. We also deem all the relief requested by way of petition for writ of mandate to be issues raised in the appeal.

[2]Section 3 of article XX of the California Constitution provides: "Members of the Legislature, and all public officers and employees, executive, legislative, and judicial, except such inferior officers and employees as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation:

" 'I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

" 'And I do further swear (or affirm) that I do not advocate, nor am I a member of any party or organization, political or otherwise, that now advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means; that within the five years immediately preceding the taking of this oath (or affirmation) I have not been a member of any party or organization, political or otherwise, that advocated the

The critical language for Jesson's purposes is in paragraph 2, which requires the affiant to state that he or she is not, nor has been for last five years, a member of an organization advocating the overthrow of the government by force or violence.

Elections Code section 200 requires candidates to file an affirmation of that oath when filing their declaration of candidacy. However, the California Supreme Court in *Vogel v. County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961] (*Vogel*) found paragraph 2 of the oath to be invalid under the United States Constitution. That is, it would violate the Constitution of the United States for California to require that language. Our high court concluded that two decisions of the United States Supreme Court, *Elfbrandt v. Russell* (1966) 384 U.S. 11 [86 S.Ct. 1238, 16 L.Ed.2d 321] (*Elfbrandt*), and *Keyishian v. Board of Regents* (1967) 385 U.S. 589 [87 S.Ct. 675, 17 L.Ed.2d 629] (*Keyishian*), compelled such a result.

In all subsequent elections (including all gubernatorial elections from the reelection of Governor Reagan forward), the forms and papers filed by candidates have contained the oath absent the stricken paragraph 2. Likewise, the candidacy papers filed by Governor Davis, Bill Simon and all the other candidates in the last election contained only the portions of the oath which have survived—with the exception of Jesson, who typed up the entire oath, including the now defunct paragraph 2, and filed it along with his nomination papers. And because he was the only one to do so, he wants the Secretary of State enjoined from certifying the election results. In theory at least, Jesson's contest would mean that only he, as the sole "eligible" candidate, would be on the November ballot.[3] (At oral argument he scaled back his request for relief: He simply asked that only the candidates who had

---

overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means except as follows:

---

    (If no affiliations, write in the words "No Exceptions")
and that during such time as I hold the office of _____
(name of office)
I will not advocate nor become a member of any party or organization, political or otherwise, that advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means.'

"And no other oath, declaration, or test, shall be required as a qualification for any public office or employment.

" 'Public officer and employee' includes every officer and employee of the State, including the University of California, every county, city, city and county, district, and authority, including any department, division, bureau, board, commission, agency, or instrumentality of any of the foregoing."

[3]See Elections Code section 16440.

taken the trouble to appear in this case be on the ballot, assuming that they had taken the full oath.)

Although the Governor and his challenger disagree on many issues, on one point they agree—this is a frivolous lawsuit. And, they are right.[4] In light of *Vogel*, there was absolutely no need for a formal trial on Jesson's contest. The court had the power to dismiss it based on its prima facie legal insufficiency.[5]

Jesson, representing himself, argues that *Vogel* is not dispositive of his challenge. His reasons are somewhat difficult to understand, but essentially are twofold: Either (1) *Vogel* was incorrectly decided, or (2) in any event the court's holding in *Vogel* does not apply to candidates for *elected* public office, as distinct from nonelected civil servants.

As to the first ground, there is nothing we can do. Even if we were to agree with Jesson, we are, under the California state Constitution, a court that is subordinate to the state Supreme Court. (E.g., Cal. Const., art. VI, § 12, subd. (b).) If Jesson wants *Vogel* overruled, he must take his case to a higher authority.

■ As to the second, it is true that neither *Elfbrandt* (state employees), *Keyishian* (university faculty members), nor *Vogel* (county employees) involved would-be elected officials. But nothing in those cases supports a distinction between nonelected and elected state employees, and the rationale of those decisions was the same as the earlier *Wieman v. Updegraff* (1952) 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216], which struck down an

---

[4]In light of our determination that the trial court properly dismissed the election contest, it is clear that the remaining issues, technically presented by way of writ petition, including Jesson's request that his opponents' lawyers produce their law licenses, are moot. For the same reason, we deny the request of Edie Bukewihge, another defeated candidate for the Republican nomination who has sided with Jesson in this litigation, that this court authorize subpoenas requiring the respective counsel for Governor Davis and Bill Simon to "produce their licenses" or be barred from the case.

[5]Jesson argues that the trial court had no authority to dismiss a *primary* election contest absent a trial, because Elections Code section 16602 specifically provides for the summary dismissal of proceedings in contests of *general* elections if the statement of the cause of the contest is insufficient, but there is no such provision concerning contests of *primary* elections. It is absurd, however, to infer from the Legislature's omission an *entitlement* to a formal trial of a contest in primary elections, regardless of how specious the ground. The undisputed facts of the case required no trial: The trial court had everything it needed to make a legally correct decision. There was no need to haul in the Governor, Mr. Simon, and all the other candidates so that Jesson could make them testify in open court that they had not submitted oaths with paragraph 2.

Oklahoma loyalty oath required of "all state officers," and which was litigated in light of the oath's purpose of making " 'loyalty a qualification to *hold public office* or be employed by the State.' " (*Id.* at p. 187 [73 S.Ct. at p. 217], italics added.) That rationale was that a state cannot exclude persons from employment solely on the basis of an organizational membership, regardless of their knowledge concerning the organization. To do so would be mere guilt by association. (See *id.* at p. 190 [73 S.Ct. at p. 218]; accord, *Elfbrandt, supra*, 384 U.S. at pp. 17-19 [86 S.Ct. at pp. 1241-1242]; *Keyishian, supra*, 385 U.S. at p. 607 [87 S.Ct. at p. 686]; *Vogel, supra*, 68 Cal.2d at pp. 23-25.)

While *Wieman* also did not arise from a direct challenge to would-be elected officers (in that case it was also faculty and staff at a state college), any doubt as to applicability of the loyalty oath cases to elected officials has been laid to rest by *Communist Party of Indiana v. Whitcomb* (1974) 414 U.S. 441 [94 S.Ct. 656, 38 L.Ed.2d 635], which took the rationale of *Elfbrandt* and *Keyishian* one step further. There, the United States Supreme Court considered an Indiana statute that precluded from the ballot any political party whose officers had not filed an affidavit stating under oath that the party did not advocate the overthrow of the government by force or violence. (*Id.* at pp. 442-443 [94 S.Ct. at pp. 658-659].) The court squarely held that the loyalty oath requirement of the statute violated the First and Fourteenth Amendments of the United States Constitution (414 U.S. at p. 446 [94 S.Ct. at p. 660]) reasoning that free speech and free press guarantees " 'do not permit a State to forbid or proscribe advocacy . . . *except* where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action' " (*Id.* at p. 448 [94 S.Ct. at p. 661], italics added, quoting *Brandenburg v. Ohio* (1969) 395 U.S. 444, 447 [89 S.Ct. 1827, 1829, 23 L.Ed.2d 430].) In short, even a loyalty oath that required the affiant to swear that he or she did not "advocate" the overthrow of the government by force or violence would violate the federal Constitution, unless there was some showing that the advocacy was going to result in "imminent" lawless action.

There is no way that Jesson's theory can be reconciled with the United States Supreme Court's decision in *Communist Party of Indiana v. Whitcomb, supra*, 414 U.S. 441. It is very clear, then, that paragraph 2 of the oath as stated in the California Constitution cannot be required of anyone to become Governor of California or even to get a library card. End of discussion.

The judgment of the trial court dismissing Jesson's election contest is affirmed. Respondents are entitled to costs.

Rylaarsdam, J., and O'Leary, J., concurred.