[No. G037118. Fourth Dist., Div. Three. Feb. 27, 2007.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, TUSTIN
CHAPTER NO. 450, Plaintiff and Appellant, v.
TUSTIN UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

## COUNSEL

Michael R. Clancy and Sonja J. Woodward for Plaintiff and Appellant.

Parker & Covert, Spencer E. Covert and Barbara J. Ginsberg for Defendants and Respondents.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

When a classified school district employee is on disability leave for five months or less, the employer school district may not, under Education Code section 45196, deduct from the absent employee's salary an amount exceeding the sum "actually paid a substitute employee employed to fill his position during his absence." (Ed. Code, § 45196.) (All further statutory references are to the Education Code unless noted.) As an alternative, the school district may maintain a policy of crediting regular classified employees with additional working days per year of paid sick leave. (§ 45196.)

Joan Featherstone is a classified employee of the Tustin Unified School District (School District). While she was on temporary disability leave, the School District, pursuant to its long-standing practice, assigned some of her work hours to other classified employees and deducted their pay from her salary. The California School Employees Association and its Tustin Chapter No. 450 (together, the CSEA) challenged that practice on the ground those employees were not substitute employees because they were already employed by the School District and, hence, were not employed to replace Featherstone while she was temporarily absent. The superior court concluded section 45196 permitted the deductions and denied the CSEA's petition for writ of mandate.

The CSEA's appeal presents the issue whether a substitute employee under section 45196 includes a currently employed, classified employee who is assigned the absent employee's hours or tasks. Section 45103 defines "substitute employee" as "any person employed to replace any classified employee who is temporarily absent from duty." (§ 45103, subd. (d)(1).) We conclude the term "substitute employee," as used in section 45196 and defined in section 45103, means a person hired for the purpose of filling in for a temporarily absent employee. The term "substitute employee" does not include a current, classified employee who is assigned—voluntarily or involuntarily— the absent employee's hours or tasks. The School District did not adopt section 45196's alternative scheme for compensating temporarily disabled employees. Thus, as we explain, neither section 45196 nor the statutory scheme as a whole permitted the School District to deduct from Featherstone's salary the amount paid to its currently employed, classified employees who had been assigned Featherstone's job responsibilities.

In addition, we find no merit in the School District's laches, estoppel, and unclean hands arguments, and reject the School District's challenge to the CSEA's standing to seek prospective relief on behalf of employees other than Featherstone. Accordingly, we reverse and remand with directions to enter judgment in the CSEA's favor.

FACTS

The School District employs both certified (credentialed) and classified (noncredentialed) employees. Featherstone is employed by the School District in the classified position of nutrition services assistant I.

The CSEA is a labor union organized to represent employees in their relations with public school employers. The CSEA is the exclusive representative of a unit of classified employees employed by the School District. Because Featherstone is a classified employee, the CSEA represents her in her employment relations with the School District, and she is a member of the CSEA's bargaining unit.

In May 2003, the School District placed Featherstone on a five-month disability leave of absence. Because Featherstone is not scheduled to work during the summer, her leave of absence ended, and she returned to work, in January 2004.

Since 1978, the School District has maintained a practice of offering some or all of the hours made available by a classified employee's disability leave of absence to other regular classified employees willing to work additional hours. When other qualified employees from the same job classification are not available to accept the hours made available by the disability leave of absence, the School District hires nonemployee substitutes to work the absent employee's hours. The School District deducts from the wages of a classified employee on disability leave the amount paid to the current employee or hired substitute who worked the absent employee's hours. On any given day of absence, the total amount deducted does not exceed the amount of the absent employee's pay for that day.

The School District maintains a roster of nonemployees who are eligible to serve as substitutes in the classification of nutrition services assistant II, but does not maintain a roster of nonemployee substitutes for the classification of nutrition services assistant I. When a nutrition services assistant I is on disability leave, the School District prefers to use other employees of the same classification to replace the absent employee.

For each day that Featherstone was absent on disability leave, the School District deducted from her pay the hourly rate of, times the hours worked by, the person working her hours. Nine different people worked Featherstone's hours while she was on disability leave. Six of those persons were School District employees with the classification of nutrition services assistant I. They voluntarily accepted the additional work normally assigned to Featherstone to supplement their income. The other three were nonemployees from the School District's roster of substitutes for the classification of nutrition services assistant II, a lower classification than nutrition services assistant I. The School District deducted from Featherstone's pay the amounts paid both to the existing classified employees and to the hired substitutes who worked her hours. (Featherstone does not dispute the deduction of the amounts paid to the three substitutes hired from the School District's roster.)

Featherstone's employment is covered by a collective bargaining agreement between the School District and the CSEA. Article 7, section 7.9 of the collective bargaining agreement provides that when the covered employee is absent from work on disability leave for five months or less, "there shall be deducted from the salary due the bargaining unit member the amount actually paid to a substitute employee." The collective bargaining agreement defines "substitute employee" as "any person employed to replace any classified employee who is temporarily absent from duty."

PROCEEDINGS IN THE SUPERIOR COURT

In August 2005, the CSEA filed a claim with the School District pursuant to Government Code section 905. After the School District denied the claim, the CSEA filed a petition for writ of mandate (the Petition) pursuant to Code of Civil Procedure section 1085 requesting the superior court to compel the School District, its governing board, superintendent, and director of personnel services "to pay Ms. Featherstone and other similarly situated classified employees their full salary and benefits for any day during the five months on which the District does not actually pay a substitute employee to perform their work." The Petition alleged: "Classified employees are not substitutes. Therefore, when the District chooses to assign another person, who is not a substitute, to fill the position of the absent employee, the District has no authority to deduct any sum from the absent employee's salary."

On March 10, 2006, the superior court held a hearing on the Petition. In an order entered March 23, 2006, the court denied the Petition, concluding: "[The] School District's deductions from Joan Featherstone's pay for those amounts paid to other classified employees who replaced Featherstone while on disability leave are permissible under Education Code section 45196."

The CSEA timely appealed from the order denying the Petition. In the interest of justice, we construe the order as incorporating a final judgment appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (See *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7 [134 Cal.Rptr.2d 138]; *Jesson v. Davis* (2002) 97 Cal.App.4th 1032, 1034, fn. 1 [118 Cal.Rptr.2d 839].)

DISCUSSION

I.

*Section 45196 Did Not Permit the School District to Deduct
from Featherstone's Salary the Amounts Paid to Current
Employees Assigned Featherstone's Work Hours.*

The School District deducted from Featherstone's salary the amounts it paid to nine different employees who filled her position while she was on disability leave. Three of the nine employees were substitutes taken from the School District's roster of substitutes for the classification of nutrition services assistant II. Featherstone does not challenge the deductions for the amounts paid to these three substitute employees. Six of the nine employees who performed Featherstone's tasks were not hired as substitutes but were already employed in the classification of nutrition services assistant I. We

interpret section 45196 as not permitting the School District to deduct from Featherstone's pay the amounts paid to those six employees.

We review issues of statutory interpretation de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].) The primary purpose of statutory construction is to ascertain the Legislature's intent. (*Id.* at p. 919.) We first consider the statutory language, "being careful to give the statute's words their plain, commonsense meaning." (*Ibid.*) "If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." (*Ibid.*) If our analysis of the statutory language "leaves doubt about its meaning, we may consult other evidence of the Legislature's intent, such as the history and background of the measure." (*People v. Birkett* (1999) 21 Cal.4th 226, 231–232 [87 Cal.Rptr.2d 205, 980 P.2d 912].)

Section 45196 provides, in part: "When a person employed in the classified service is absent from his duties on account of illness or accident for a period of five months or less, whether or not the absence arises out of or in the course of employment of the employee, the amount deducted from the salary due him for any month in which the absence occurs shall not exceed the sum which is actually paid a substitute employee employed to fill his position during his absence." Section 45103 defines "substitute employee" as "any person employed to replace any classified employee who is temporarily absent from duty." (§ 45103, subd. (d)(1).) A school district must pay the substitute employee an amount that is less than the salary due the absent employee, except "in a district the governing board of which has adopted a salary schedule for substitute employees of the district." (§ 45196.)

As an alternative, a school district may adopt and maintain a rule requiring the school district to credit a regular classified employee with at least 100 working days per year of sick leave, compensated at not less than 50 percent of the employee's regular pay. (§ 45196.)

What does the word "employ" mean as used in sections 45196 and 45103? We conclude "employ" is synonymous with "hire." The word "employ" does not mean "to use" or "to assign." The Education Code uses the word "assign" specifically to refer to the situation where an existing employee is given a particular task. For example, section 45102, subdivision (b) states, "[i]f, during a school year, it is necessary to assign a regular classified employee to perform an assignment or service in addition to his or her regular assignment, a school district shall pay the classified employee on a pro rata basis for the additional assignment or service . . . ." In contrast, the Education Code uses the word "employ" in situations where it means "hire." An example is section

45103, subdivision (a), which states, "[t]he governing board of any school district shall employ persons for positions not requiring certification qualifications. . . . The employees and positions shall be known as the classified service."

■ Accordingly, under section 45196, a school district may deduct from the absent employee's pay only the amounts paid to a substitute employee *hired to fill the absent employee's position*, unless the district adopts and maintains a policy crediting regular classified employees with not less than 100 days per year of paid sick leave. An existing, classified employee who is *assigned* the absent employee's hours or tasks is not a substitute employee. If the school district assigns the absent employee's tasks to an employee who was hired for a purpose other than to fill the absent employee's position, then section 45196 does not permit the district to deduct that employee's pay from the absent employee's salary.

Legislative history supports that interpretation. We grant the CSEA's request for judicial notice of (1) Senate Committee on Industrial Relations, analysis of Assembly Bill No. 258 (1985–1986 Reg. Sess.) as amended July 3, 1985 (amending § 45103), and (2) Senate Rules Committee, Office of Senate Floor Analyses, third reading analysis of Assembly Bill No. 918 (2003–2004 Reg. Sess.) as amended June 5, 2003 (amending § 45102). Although the trial court did not have the benefit of these materials, they assist in our de novo review.

Assembly Bill No. 258 (1985–1986 Reg. Sess.) amended section 45103 to define "substitute employee" as meaning any person "employed to replace a classified employee who is *temporarily* absent from duty." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 258, *supra*, as amended July 3, 1985, p. 1.) The staff analysis for Assembly Bill No. 258 stated, "[p]roponents argue that the bill would correct an abuse in the classified service whereby a number of school and community college districts hire substitute employees to fill vacant, permanent positions on a long-term basis." (*Id.* at p. 2.) The staff analysis thus supports the proposition that a substitute employee is someone hired for the purpose of replacing a temporarily absent classified employee, and does not include a current, classified employee assigned to perform an absent employee's tasks. Indeed, the staff analysis stated, "[s]ubstitute or short-term employees are not part of the classified service." (*Ibid.*)

The analysis of Assembly Bill No. 918 (2003–2004 Reg. Sess.), which amended section 45102, tacitly recognizes the distinction between a substitute employee and a current, classified employee assigned to fill in for a temporarily absent employee. The analysis described the bill's purpose as clarifying

that classified school employees assigned to fill in for absent employees are to be paid "on the regular classified salary schedule and not at a substitute rate." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 918, *supra*, as amended June 5, 2003, p. 3.) The analysis reported, "[the] CSEA believes that this change is necessary to ensure that school districts do not take advantage of classified school employees whenever they are being asked to take on an additional *assignment*." (*Ibid.*, italics added.)

The trial court interpreted section 45103, subdivision (d)(1) as defining the term "substitute employee" to mean "any person *temporarily replacing* a classified employee." (Italics added.) As explained, *ante*, both section 45103, subdivision (d)(1) and section 45196 define "substitute employee" as someone "employed"—that is, hired—to perform the absent employee's tasks. The School District itself recognizes this distinction by maintaining a roster of substitutes from which it hires people to replace employees on temporary disability leave.

At oral argument, the School District asserted that when, as in this case, a current employee voluntarily agrees to perform the tasks of a regular classified employee on a temporary leave of absence, the School District "rehires" the current employee to perform the additional tasks. That assertion has no merit. As the staff analysis of Assembly Bill No. 918 (2003–2004 Reg. Sess.) recognized, when an employee voluntarily agrees to assume additional tasks, the School District assigns the tasks to that employee. The School District does not rehire that employee. There is no evidence in the record of the School District preparing the paperwork and undertaking the administrative tasks (including job postings) required to hire an employee, just to assign additional tasks to an existing employee. Further, under the statutes, the amount of a temporarily disabled employee's salary should not depend on whether another employee voluntarily or involuntarily agreed to perform the absent employee's tasks.

■ All parties to this appeal argue at length the issue whether a substitute employee may be a classified employee, and vice versa. The source of contention is subdivision (b)(1) of section 45103, which states, "[s]ubstitute and short-term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service." According to the School District, a substitute employee who is employed and paid for 75 percent or more of a school year is a classified employee. Thus, the School District argues, any classified employee may be a substitute. That argument too is without merit: The fact a substitute employee may be a classified employee does not mean that all classified employees are or can be substitute employees. Whether an employee is a substitute employee depends on the purpose

for which a school district hires the employee. An employee, classified or otherwise, who was not hired to replace or fill the position of a temporarily absent classified employee is not a substitute by the terms of sections 45103 and 45196.

The School's District's interpretation of sections 45103 and 45196 is inconsistent with the statutory scheme for compensating classified employees who are on disability leave. Section 45196 permits a school district to opt out of its rules by maintaining a policy of crediting classified employees with at least 100 working days per year of sick time compensated at not less than 50 percent of an employee's regular salary. The Education Code thus gives a school district a choice: The district may deduct from the absent employee's salary the amount actually paid to a person hired as a substitute, or it may adopt and maintain a policy crediting regular classified employees with at least 100 working days per year of paid sick leave. Each alternative has its benefits; each has its burdens. If, as the School District contends, a school district may use any existing classified employee as a substitute under section 45196 and deduct that employee's pay from the absent employee's salary, then a school district would receive the benefits of both options without the burdens of either.

The School District posits several sensible reasons for its policy of assigning the tasks of temporarily absent classified nutrition services assistant I employees to other employees within that classification. The Education Code does not prohibit the School District from maintaining that policy. However, section 45196 does prohibit the School District from deducting from the absent employee's salary the amount paid to the employees performing the absent employee's tasks—unless the School District hired those employees "to fill [the absent employee's] position during his [or her] absence." (§ 45196.) The School District's justifications for its policy might support a decision to adopt and maintain the alternative sick day policy. However, the School District did not maintain such a sick day policy, and negotiated collective bargaining agreements in line with other provisions of section 45196.

We therefore conclude section 45196 did not permit the School District to deduct from Featherstone's pay the amounts paid to the six current, classified employees because they were not "substitute employee[s] employed to fill [Featherstone's] position during [her] absence."

## II.

### *The School District's Laches, Estoppel, and Unclean Hands Defenses Have No Merit.*

The School District asserted affirmative defenses of laches, estoppel, and unclean hands, any one of which, it argues, supported denial of the Petition. The trial court made no findings on those affirmative defenses. The CSEA did not request a statement of decision, object to the court's order, or otherwise bring those omissions to the trial court's attention. Thus, under the doctrine of implied findings, we infer the trial court made any and all findings necessary to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [17 Cal.Rptr.3d 96].) We review the implied findings under the substantial evidence standard. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133–1134; *SFPP v. Burlington Northern & Santa Fe Ry. Co., supra,* 121 Cal.App.4th at p. 462.) Nonetheless, we conclude the School District failed to submit evidence supporting its affirmative defenses, or they fail as a matter of law.

### A. *Laches*

The School District argues the Petition was barred under the doctrine of laches because the CSEA has never objected to the School District's disability pay deduction policy since it began in 1978. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617], fn. omitted.) " '[L]aches is defined as an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable. [Citation.] Thus, if a trial court finds (1) unreasonable delay; and (2) prejudice, and if its findings are not palpable abuses of discretion, a finding of laches will be upheld on appeal.' " (*Piscioneri v. City of Ontario* (2002) 95 Cal.App.4th 1037, 1046 [116 Cal.Rptr.2d 38].)

"Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue." (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) The School District argues that since 1978 it has followed its policy of assigning the hours of

absent classified employees to other classified employees and that the policy benefits the CSEA bargaining unit by allowing its members to supplement their pay by working additional hours. However, the School District does not identify any detriment it has suffered from the CSEA's alleged delay in challenging the policy. The School District does not assert, for example, it could have developed a roster of nonemployees eligible to work as nutrition services assistant I substitutes if the CSEA had challenged the policy earlier. Because the School District failed to make an "affirmative demonstration" of prejudice, its laches defense failed as a matter of law.

## B. *Estoppel*

■ The School District argues the doctrine of estoppel bars the CSEA's claim because the collective bargaining agreement between it and the CSEA covers the issue of substitute employees and reflects the parties' full and entire understanding. The School District thus asserts the CSEA is "attempting to accomplish a remedy through the Courts that it has not accomplished through the collective bargaining process." Because the School District's estoppel defense is based on an interpretation of the parties' collective bargaining agreement, it presents a question of law reviewed de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960]; see *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505] [contract interpretation is a question of law when the extrinsic evidence, if any, is not in conflict].)

We see no inconsistency between the CSEA's claims in this litigation and the terms of the collective bargaining agreement. That agreement provides that during the period in which a bargaining unit member is on disability leave, "there shall be deducted from the salary due the bargaining unit member the amount actually paid to a *substitute employee*." (Italics added.) This language is similar to that of section 45196, which provides, "the amount deducted from the salary due [the absent employee] for any month in which the absence occurs shall not exceed the sum which is actually paid a *substitute employee* employed to fill his position during his absence." (Italics added.)

By prosecuting the Petition, the CSEA was not seeking a remedy denied by the collective bargaining agreement. Rather, the CSEA was seeking to enforce section 45196 and its counterpart in the collective bargaining agreement by asserting the term "substitute employee" means a nonemployee who is hired to fill the absent employee's position. Neither the collective bargaining agreement nor section 45196 resolves that issue. Estoppel therefore does not bar the CSEA's claim.

### C. *Unclean Hands*

The School District argues the doctrine of unclean hands bars the CSEA's claim because "the regular classified employees represented by [the CSEA] have been benefitting for many years from the District's long-standing practice of allowing CSEA bargaining unit members to be assigned additional hours of work . . . as a substitute for another classified employee who is out on disability leave."

The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy. (*General Elec. Co. v. Superior Court* (1955) 45 Cal.2d 897, 899–900 [291 P.2d 945]; *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446 [99 Cal.Rptr.2d 678].) Unclean hands provides a defense when granting the plaintiff any relief would be inequitable. (*Dickson, Carlson & Campillo v. Pole, supra*, 83 Cal.App.4th at p. 447.) "Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." (*Ibid.*)

Neither the School District nor the CSEA cites analogous case law pertaining to unclean hands. As to the nature of the misconduct, the School District asserts the CSEA (1) never previously objected to the School District's substitute employee practice, and (2) bargaining unit members benefited from the practice by working absent employee's hours. The CSEA does not dispute those assertions. The CSEA has, it seems to us, taken inconsistent positions with respect to the School District's substitute pay deduction policy, and some of the CSEA's bargaining unit members have benefited from that inconsistency. But the CSEA's conduct was neither unconscionable nor done in bad faith, and was not inequitable enough to deny the CSEA the relief sought by the Petition.

### III.

### *The CSEA Has Standing to Seek Prospective Relief on Behalf of Employees Other Than Featherstone.*

The School District challenges the CSEA's standing to seek prospective relief on behalf of bargaining unit members other than Featherstone, arguing the CSEA is limited to seeking relief on her behalf because the Petition failed to identify any other affected employee. However, the CSEA brought its mandate action under Government Code section 3543.8, which provides, in relevant part: "Any employee organization shall have standing to sue in any action or proceeding heretofore or hereafter instituted by it as representative

and on behalf of one or more of its members." The CSEA is an employee organization (see *California School Employees Assn. v. Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580, 583 [199 Cal.Rptr. 635]) and therefore had standing to seek relief on behalf of its members. The Petition sought relief on behalf of Featherstone and "other similarly situated classified employees."

In a similar vein, the School District argues the CSEA failed to file a public entity claim on behalf of any employee other than Featherstone. The CSEA's public entity claim against the School District alleged "[t]he losses incurred by CSEA are the unknown losses which will be incurred by members of its bargaining unit who will not be paid . . . because of the District's failure to follow *Education Code* requirements." The CSEA's claim thereby put the School District on notice the CSEA was challenging the School District's practice as applied in the present to Featherstone, and in the future to similarly situated employees. Thus, the CSEA substantially complied with the public entity claim requirements of Government Code section 945.4. (See *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 [115 Cal.Rptr.2d 705].)

The School District argues the CSEA cannot obtain prospective relief on behalf of employees other than Featherstone because the CSEA failed to seek declaratory relief in the Petition. Declaratory relief allegations are unnecessary, however, when a petition for writ of mandate challenges a public entity's policy or practice based on an interpretation of relevant law. (*Timmons v. McMahon* (1991) 235 Cal.App.3d 512, 517–518 [286 Cal.Rptr. 620].) Although the Petition sought monetary relief for Featherstone, the Petition challenged the School District's pay deduction policy based on an interpretation of section 45196. Thus, a writ of mandate ordering the School District to pay Featherstone amounts wrongfully deducted from her disability pay would of necessity conclude the School District's policy violated section 45196 and compel the School District to change that policy.

Finally, the School District argues the CSEA failed to join three of the six classified employees who worked some of Featherstone's hours while she was on disability. The School District contends those three employees are indispensable because the CSEA "claim[s] that [they] were overpaid in that their hourly rate of pay exceeded Featherstone's." The CSEA has never made that claim. None of the six classified employees is an indispensable party.

## Disposition

The judgment is reversed and the matter remanded with directions to enter judgment in favor of the CSEA. Appellant to recover costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.