Filed 8/1/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN J. SCHMIDT,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL,<br><br>    Defendant and Appellant. | 2d Civil No. B260643<br>(Super. Ct. No. 1385226)<br>(Santa Barbara County) |

Penal Code section 849.5 provides that if a person is arrested and released and no accusatory pleading is filed, the arrest shall be deemed a detention *only*.[1]  Section 851.6, subdivision (b) provides that the arresting law enforcement agency shall issue the person a certificate describing the action as a detention.  Subdivision (d) of the section provides that the official criminal records shall delete any reference to an arrest and refer to the action as a detention.  The California Highway Patrol (CHP) does not comply with sections 849.5 and 851.6.

John J. Schmidt brought a class action against the CHP for a writ of mandate to compel the CHP to comply.  The trial court certified the class and granted Schmidt's writ petition.  The court also awarded Schmidt attorney fees pursuant to Code of Civil Procedure section 1021.5, the private attorney general statute.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*FACTS*

On May 1, 2011, Schmidt was arrested by the CHP for driving under the influence. He was booked into the Santa Barbara County jail and released later that day on his own recognizance. Schmidt signed a notice to appear in court.

The CHP sent Schmidt's arrest report to the Santa Barbara County District Attorney's Office. The district attorney reviewed the referral and decided not to file charges "at this time."

The CHP did not provide Schmidt with a certificate describing his arrest as a detention. (§ 851.6, subd. (b).) Nor did the CHP report the arrest as a detention to the Department of Justice.

*CLASS ACTION*

Schmidt brought this action against the CHP on behalf of himself and all persons similarly situated. The action sought a writ of mandate to compel the CHP to comply with sections 849.5 and 851.6, subdivision (b).

Over the CHP's objection, the trial court certified the class as follows: "'Any and all individuals who were arrested by the California Highway Patrol in Santa Barbara County and taken into custody and booked between June 1, 2009 and the present, who were released from custody, who did not have an accusatory pleading related to the arrest filed against them in the Santa Barbara County Superior Court, who did not receive a certificate of detention from the California Highway Patrol, and who did not receive a disposition noting the action was a detention only on their criminal records maintained by the California Highway Patrol and the California Department of Justice.'"

The CHP moved for summary judgment. The trial court denied the motion and the matter proceeded to a court trial.

Schmidt testified that he was arrested for a driving under the influence offense. Schmidt was taken to jail and released the next day. He was not prosecuted; he was not given notice that his arrest be considered a detention; and his criminal history was not updated.

2

Santa Barbara Senior Deputy District Attorney Lee Carter testified that he is the filing deputy for his office. He determines whether a case should be filed. He said that neither he nor anyone acting on behalf of his office filed an "accusatory pleading" against Schmidt.

Susan Segura testified that she has been the records supervisor for the Santa Barbara Police Department for 16 years. She testified to her office's procedure when the police department refers a case to the district attorney and the district attorney's office sends notice to the police department that the case has been rejected.

"[Segura:] We apply our local procedure which is to update our files to indicate that the arrest is now considered a detention. It's no longer considered an arrest. So we do update our files to reflect that information. We also prepare the detention certificate to send to the person that was arrested.

[Schmidt's counsel:] How do you--describe, please, how you reflect the event as a detention?

"[Segura:] In our local records management system, we have a module for arrest. We update the module for arrest with the status of detention only. We also stamp any paper arrest with the detention stamp."

Segura testified that this policy is consistent with the industry standard.

The trial court found Segura's testimony persuasive and stated that Schmidt should have been issued a certificate of detention by the CHP.

The trial court determined that the term "released" in sections 849.5 and 851.6 means released from custody, which may include a notice to appear in court. The term "accusatory pleading" may include a notice to appear, but only when filed with the court. The term "filed" means filed with the court, not the prosecuting agency.

*WRIT OF MANDATE*

The trial court issued a writ of mandate as follows:

"To Respondent California Highway Patrol ("CHP")

"YOU ARE HEREBY COMMANDED TO:

3

"1. Issue certificates of detention to class members.

"2. Delete any references to the action as an arrest from each class member's arrest records of the CHP and make written notice of each class member's case disposition to the Bureau of Criminal Identification and Investigation records of the Department of Justice.

"3. Include a record of release for each class member immediately upon receipt of this Peremptory Writ and have the commands set forth herein completed on or before October 9, 2014, with verification of compliance presented to this Court at a case management conference set for October 29, 2014, at 8:30 a.m.

"4. CHP shall conduct a diligent search in all databases that they have access to for each and every class member, including individuals who fall within the definition of the class but were arrested by CHP after June 1, 2012, to determine their current address and mail them each a certificate of detention.

"5. CHP must comply and apply the aforementioned commands to future eligible arrestees who are arrested by CHP, released from custody, and who do not have an accusatory pleading filed against them in a court of law."

The trial court awarded Schmidt attorney fees pursuant to Code of Civil Procedure section 1021.5 in the amount of $296,100.

*DISCUSSION*

*I*

The CHP contends the trial court misinterpreted sections 849.5 and 851.6, subdivision (b).

Section 849.5 provides: "In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of the release. Thereafter, the arrest shall not be deemed an arrest, but a detention only."

Section 851.6, subdivision (b) provides: "In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense,

4

the person shall be issued a certificate by the law enforcement agency which arrested him describing the action as a detention."

If the sections apply, section 851.6, subdivision (d) provides: "Any reference to the action as an arrest shall be deleted from the arrest records of the arresting agency and of the Bureau of Criminal Identification and Investigation of the Department of Justice. Thereafter, any such record of the action shall refer to it as a detention."

The CHP admits that "at first blush," the terms "released," "accusatory pleadings" and "filed" might appear unambiguous. With the deletion of the words "at first blush" and "might," we agree. We part company with the CHP when it advances the fanciful argument that the terms are not clear because of changes in criminal procedure over the last 40 years.

The CHP asserts that: 1) the word "released" as used in the statutes means released without any obligation to appear in court, 2) the term "accusatory pleading" includes a notice to appear, and 3) the term "filed" includes filed with the district attorney.

Thus, the CHP argues that sections 849.5 and 851.6, subdivision (b) do not apply where, as here, a person is released pursuant to a promise to appear, on his or her own recognizance, or on bail, and an accusatory pleading is filed with the district attorney. This argument assumes that the sections apply when a law enforcement agency determines that a person should be released with no charges filed. The statutes do not give law enforcement the powers of a prosecuting attorney.

We give the words of a statute their plain, commonsense meaning. (*California School Employees Assn., Tustin Chapter No. 450 v. Tustin Unified School Dist.* (2007) 148 Cal.App.4th 510, 517.) If the language of the statute is clear and unambiguous, there is no need for construction. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) Only if the statutory language leaves doubt about its meaning may we consult other sources of the Legislature's intent, such as the history and background of the measure. (*California School Employees Assn.*, at p. 517.)

5

The language of the statutes is clear and unambiguous. Applying the plain, commonsense meaning, a person is "released" when free to leave police custody, whether the person is released on a notice to appear, own recognizance or bail. (See, e.g., § 853.6, subd. (a)(4) ["Nothing in this subdivision shall be construed to affect a defendant's ability to be *released* on bail or on his or her own recognizance" (italics added)]; *id.*, subd. (d) ["Upon the signing of the duplicate notice [to appear], the arresting officer shall immediately *release* the person arrested from custody" (italics added)].)

A notice to appear may be an "accusatory pleading" when it is filed with the court. (*Heldt v. Municipal Court* (1985) 163 Cal.App.3d 532, 539.) But the CHP cites no authority holding that a notice to appear may constitute an accusatory pleading without being filed with the court. The ordinary meaning of a pleading is that it is a document filed with the court. (See Code Civ. Proc., § 420 ["The pleadings are the formal allegations by the parties of their respective claims and defenses, for the judgment of the court"].)

The CHP's reliance on *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728 is misplaced. There the question was whether the statute of limitations regarding plaintiff's civil action was tolled under Government Code section 945.3. That section prevents a person who is charged in an accusatory pleading with a criminal offense from bringing a civil action while the charges are pending. The court determined that a notice to appear constitutes an accusatory pleading within the meaning of section 945.3. (*Schmidlin*, at pp. 749-753.) Whether a notice to appear must be filed with the court to constitute a pleading was not an issue in the case. A case is not authority for matters not considered. (*Contra Costa Water Dist. V. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660.)

The CHP argues that designating Schmidt's arrest as a detention conflicts with statutory reporting criteria. Section 11115 requires an arresting agency to file a disposition report with the Department of Justice whenever an arrested person is released without having a complaint or accusation filed with the court. Where the disposition is

"[d]etention only" and the person is issued a certificate pursuant to section 851.6, section 11115, subdivision (b) states, "[T]he report shall state the specific reason for such release, indicating that there was no ground for making a criminal complaint because (1) further investigation exonerated the arrested party, (2) the complainant withdrew the complaint, (3) further investigation appeared necessary before prosecution could be initiated, (4) the ascertainable evidence was insufficient to proceed further, (5) the admissible or adducible evidence was insufficient to proceed further, or (6) other appropriate explanation for release."

The CHP claims that none of the reasons listed in section 11115 applies to Schmidt. But no charges were filed against Schmidt because Deputy District Attorney Carter found that low blood alcohol and an absence of a bad driving pattern would make securing a conviction difficult. Thus, the reason Carter gave for declining to file a complaint fits precisely into section 11115, subdivision (b), reason (4): "[T]he ascertainable evidence was insufficient to proceed further."

The CHP argues that a different prosecutor could have determined that the evidence was sufficient to proceed. Perhaps. So what? That argument is as persuasive as speculating that a different law enforcement agency could have come to the same erroneous interpretation of the statutes. But the Santa Barbara Police Department does comply with the statutes. What another prosecutor or law enforcement might do or not do is beside the point, not to mention speculative and irrelevant. The prosecutor here determined that the evidence was insufficient to proceed.

The CHP argues that Carter could have believed Schmidt was guilty, but that Carter simply concluded that a conviction was not reasonably foreseeable. But if Carter in his professional opinion believes the evidence is insufficient to prove Schmidt guilty, Carter's personal belief is not a pertinent inquiry and, of course, irrelevant.

What is relevant is that Schmidt was released and no accusatory pleading was filed against him. Schmidt is entitled to have his arrest deemed a detention (§ 849.5); entitled to a certificate from the CHP describing the action as a detention

7

(§ 851.6, subd. (b)); and entitled to have his arrest deleted from the records of the CHP and the Department of Justice and have any such record refer to it as a detention (§ 851.6, subd. (d)).

*II*

The CHP contends the trial court erred in certifying the class.

A class action is proper whenever "the question [in the case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impractical to bring them all before the court . . . ." (Code Civ. Proc., § 382.) The party seeking class certification must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.) The community of interest requirement involves three factors: (1) predominant common questions of law or fact, (2) class representatives with claims or defenses typical of the class, and (3) class representatives who can adequately represent the class. (*Ibid.*)

The trial court's decision in certifying the class is accorded great deference on appeal, and we may reverse only for an abuse of discretion. (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1022.) Generally we may reverse the certification order if it (1) is unsupported by substantial evidence, (2) rests on improper criteria, or (3) rests on erroneous legal assumption. (*Ibid.*)

The CHP argues the class is not ascertainable. It claims the terms "arrested" and "released" are ambiguous.

The CHP claims it is not always clear whether a person has been arrested or merely detained. (Citing *People v. Celis* (2004) 33 Cal.4th 667, 674.) But the class is composed of people who were both arrested and booked. Section 7, subdivision 21 states, "To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest." When the police perform any of the acts specified in

8

Section 7, subdivision 21, the person has been arrested and booked. There is no ambiguity. We have determined the term "released" is clear. The term "custody" is clear in this context: When a person is taken to the police station and booked, he is in custody.

The CHP argues there is insufficient evidence of numerous persons in the class. Schmidt's written interrogatory to the CHP asked, "Since June 1, 2009, in how many cases were ACCUSATORY PLEADINGS not filed by the Santa Barbara County District Attorney's Office based upon ARRESTS made by peace officers of YOUR office?" The CHP answered, "187." The CHP argues it was not asked to identify the number of persons who were arrested, taken into custody, booked and released. It may be true that not all those who were arrested and against whom no accusatory pleading was filed were taken into custody, booked and released. But all that is required to support the trial court's order is some substantial evidence. (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1022.) It is reasonable to conclude that the vast majority of those arrested and against whom no accusatory pleading was filed were also taken into custody, booked and released. The trial court's order is supported by substantial evidence.

The CHP argues the evidence is insufficient to support a finding that a community of interest exists. The CHP repeats its argument that its answer to Schmidt's interrogatory did not specify those who were taken into custody, booked and released. The argument is not persuasive.

The CHP argues that Schmidt's claims are not typical of the class. But Schmidt was arrested, taken into custody, booked and released; no accusatory pleading was filed and he did not receive a certificate of detention. That is typical of the class. Typicality refers to the nature of the claim of the class representative, not the specific facts from which the claim arose. (*Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1502.)

9

The CHP contends the writ of mandate is problematic.

The CHP argues that implementing the writ of mandate will have unequal and undesirable results. The CHP points to Deputy District Attorney Carter's testimony that sometimes he will forego prosecution of an offense in favor of proceeding with the matter as a parole or probation violation. The CHP claims that a career criminal may have a history that does not reflect his true history. But the petition to revoke parole or probation qualifies as an accusatory pleading. Such an arrest would not be deemed a detention only.

The CHP argues duplicate dispositions can occur for a single arrest. Thus if a person is arrested and released after a few hours without charges filed, the person arrested is entitled to a certificate of detention. But if the district attorney later decides that the person should be sent to misdemeanor diversion, and the person successfully completes the division program, the person will be entitled to have the arrest treated as if it never happened. (§ 1001.9.)

But obviously sections 849.5 and 851.6 do not contemplate that a person is entitled to a certificate of detention immediately upon his release from a few hours in custody. (§ 853.6, subd. (e)(3).) The sections must be read in light of section 853.6, subdivision (e)(3), giving the district attorney 25 days to file an accusatory pleading. During that period the district attorney must decide whether to file, decline to file, or place the defendant on diversion. There is no substantial probability of duplicate dispositions for the same arrest.

In any event, the writ of mandate simply requires the CHP to comply with the applicable code sections. The language of those sections is clear and unambiguous. We do not ignore that language because the CHP thinks in some situations it might lead to results are unequal or undesirable. The statutes in issue here, like every other statute, may not work perfectly under every circumstance. The CHP should take note that the Santa Barbara Police Department complies with the code sections without difficulty.

The CHP complains that the writ requires it to "conduct a diligent search in all databases that they have access to for each and every class member." The CHP claims, without citation to authority, that the court has no jurisdiction to dictate how it must perform its duty. But the court has the inherent authority to ensure that its orders are properly carried out. It is true that the mandamus cannot compel the exercise of discretion in a particular manner. (See *Sierra Club v. Department of Parks & Recreation* (2012) 202 Cal.App.4th 735, 740.) The statutes at issue here, however, confer no discretion on the CHP.

The CHP claims that searching all databases would be unduly burdensome. But the CHP cites no evidence to support this claim.

The writ requires, at paragraph 5, that the "CHP must comply and apply the aforementioned commands to future eligible arrestees who are arrested by CHP, released from custody, and who do not have an accusatory pleading filed against them in a court of law." The CHP argues the command is not consistent with the class as certified. But there is no essential difference. From the filing of the complaint and throughout the proceedings, Schmidt has asked for only one thing--that the CHP be required to comply with sections 849.5 and 851.6, subdivision (b) and (d). That is all paragraph 5 of the writ requires.

*IV*

The CHP contends the trial court abused its discretion in awarding Schmidt attorney fees.

Code of Civil Procedure section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against

11

another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The CHP argues that contrary to the trial court's finding, there was no significant benefit conferred on the general public. The CHP overlooks that it was misinterpreting statutes designed to benefit members of the public. Society as a whole benefits when law enforcement agencies properly interpret and implement the law.

The CHP expresses concern about the integrity of criminal records. But the integrity of criminal records encompasses implementing sections 849.5 and 851.6, subdivisions (b) and (d). The integrity of the public records cannot be protected unless the CHP implements the proper interpretation of those sections.

The trial court was within its discretion in awarding attorney fees.

*DISPOSITION*

The judgment is affirmed. Costs are awarded to respondent.

CERTIFIED FOR PUBLICATION.


                              GILBERT, P. J.
We concur:


        YEGAN, J.



        PERREN, J.

12

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Kamala D. Harris, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Kenneth C. Jones, Supervising Deputy Attorney General, and Nancy G. James, Deputy Attorney General, for Defendant and Appellant.

Law Office of Robin L. Unander and Robin L. Unander; Law Offices of William C. Makler, P.C., and William C. Makler for Plaintiff and Respondent.