[No. A050010. First Dist, Div. Four. Oct. 22, 1991.]

CYNTHIA TIMMONS, Plaintiff and Appellant, v.
LINDA McMAHON, as Director, etc., Defendant and Respondent.

## COUNSEL

Michael D. Keys and Robert P. Capistrano for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**ANDERSON, P. J.**—Appellant Cynthia Timmons (Timmons) successfully pursued her administrative mandamus action to obtain benefits under the state-mandated Aid to Families with Dependent Children-Foster Care (AFDC-FC) program[1] during a period when she was temporary guardian of two minor children. In the same lawsuit Timmons also sought an ordinary writ of mandate compelling Linda McMahon, Director of the Department of Social Services (Department), to correct the Department's eligibility policies so that otherwise eligible applicants would not be denied benefits solely because they were temporary rather than permanent guardians; her complaint contained parallel prayers for injunctive and declaratory relief as well. We agree with Timmons that the trial court should have expanded its ruling to mandate compliance with the law and, accordingly, reverse.

### I. BACKGROUND

In the fall of 1988 Timmons petitioned for temporary guardianship for two minor boys to (1) expedite receipt of aid for their benefit and (2) permit her to act on their behalf concerning medical treatment, school decisions, etc. The court issued temporary guardianship papers and thereafter Timmons applied to the San Francisco County Department of Social Services (County) for AFDC-FC benefits. The County turned her down because at that time she

---

[1] Welfare and Institutions Code section 11400 et seq.

Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

was the minors' temporary legal guardian.[2] Timmons requested an administrative hearing; the administrative law judge issued a proposed decision wherein she concluded that the statutory scheme did not distinguish between temporary and permanent guardians so long as the guardianship was obtained from a California court.

Respondent, in her capacity as Director of Department, rejected the proposed decision. She issued her own superseding decision denying Timmons's claim on the basis that under the statutory and regulatory scheme, Timmons did not meet the criteria for receiving aid because she "had only temporary guardian status." The present lawsuit followed. The trial court granted Timmons's petition for writ of administrative mandate but denied all other relief. Nonetheless, the court also issued a statement of decision explaining in no uncertain terms that the Department's policy and practice of distinguishing between temporary and permanent legal guardians for purposes of establishing AFDC-FC eligibility violated the controlling statutes.

## II. The Merits

The trial court's decision was correct.

We are charged by statute with equitably and fairly construing the laws relating to public assistance programs, including the AFDC-FC program, so as to effect their stated objects and purposes. (§ 11000.) In the same vein, those who administer public aid programs are charged with administering them "fairly to the end that all persons who are eligible and apply for such public social services shall receive the assistance to which they are entitled promptly . . . ." (§ 11004.)

The particular program at issue here is the AFDC-FC program. Aid under this component is available on behalf of minors placed in a variety of settings, including those placed and living "in the home of a nonrelated legal guardian." (§§ 11401, subd. (d) and 11402, subd. (b).) This aid "shall be paid" to an otherwise eligible child living with a nonrelated legal guardian, provided that the guardian cooperates with the local welfare department by developing (and updating every six months) a written assessment of the child's needs and carrying out the county's case plan for that child. (§ 11405, subd. (a).) It comes as no surprise that under the code, the term "shall" is mandatory. (§ 15.)

---

[2] Six weeks later she received letters of "permanent" guardianship.

The Department's own internal regulations define "legal guardian" as "an individual appointed guardian of the person or of the person and the estate of a child by a California court pursuant to Probate Code section 1514, or section 1440 if guardianship was established prior to January 1, 1984; or Welfare and Institutions Code Section 336.25(e)." (Dept. Manual, Eligibility and Assistance Stds., § 45-101(u).)

Section 366.25, subdivision (e), states that proceedings for the appointment of a guardian of a minor who is also a dependent of the juvenile court shall be in that court; it does not differentiate between temporary and permanent guardians. Probate Code section 1514 empowers the court to appoint a guardian of a minor "[u]pon hearing of the petition, if it appears necessary or convenient . . . ." Probate Code section 1541 calls for additional items in the petition where the proposed guardian is a nonrelative. On or after the date of filing a petition for appointment of a guardian, petitioner can also request appointment of a temporary guardian; the court may, upon good cause, appoint a temporary guardian to serve pending final determination on the underlying petition. (Prob. Code, § 2250, subds. (a), (b).) One can request appointment of a guardian and a temporary guardian in the same petition. (Prob. Code, § 2250, subd. (d).)

It is apparent from this scheme that a temporary guardian is appointed in the context of a petition for guardianship, the purpose being to provide interim care, maintenance and support for the minor pending final appointment. (See Prob. Code, § 2252.) Timmons's own case is illustrative: she asked for temporary guardianship as an interim measure because the hearing date on the permanent guardianship would be held one month later; in the meantime, she needed to care for the boys and have authority to make vital decisions respecting medical care, schooling, etc.

The purpose of the AFDC-FC program is to provide aid for needy children in foster care. These children are in no less need of aid when their guardian holds temporary as opposed to permanent letters of guardianship. Since the governing statutes mandate, without qualification, that AFDC-FC aid be provided on behalf of minors living in the home of nonrelated legal guardians, the Department's regulation is invalid to the extent it suggests they are not entitled to benefits during the temporary guardianship period authorized by section 2250 of the Probate Code. (See *Waits* v. *Swoap* (1974) 11 Cal.3d 887, 895 [115 Cal.Rptr. 21, 524 P.2d 117].) A "legal" guardian is a guardian appointed by a court pursuant to certain legal formalities. A temporary guardian appointed pursuant to Probate Code section 2250 is just as legal as any other guardian.

We conclude the pertinent statutes are unambiguous and provide no foothold for denying AFDC-FC benefits to applicants who have obtained temporary rather than permanent guardianship. Hence, neither the Department nor the county welfare agencies have any discretion to interpret the governing scheme as empowering them to withhold benefits solely because of the applicant's status as a temporary nonrelated guardian.

### III. ORDINARY MANDATE WAS PROPER HERE

■ Code of Civil Procedure section 1085 authorizes a trial court to issue a writ of mandate "to compel the performance of an act which the law specifically enjoins . . . ." Mandamus is brought upon verified petition of a beneficially interested party. (Code Civ. Proc., § 1086.) "These terms translate into a two-sided requirement for mandamus: '[T]here must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty.' " (*City of Gilroy* v. *State Bd. of Equalization* (1989) 212 Cal.App.3d 589, 607 [260 Cal.Rptr. 723].) Finally, this extraordinary writ "must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)

■ The Director argues that ordinary mandate is not a proper remedy here because the only matter at issue is the Department's adjudication of the rights of Timmons, an individual. Not so. The facts were never in dispute; the only controversy is the validity of the Department's and the County's *legal interpretation* of the relevant eligibility requirements. In the course of her administrative appeal, Timmons in effect demonstrated a practice and policy of denying eligibility based on temporary guardianship status. For example, the County's "statement of position" with respect to Timmons's request for a hearing stated it "interprets" the foster care regulations "to mean that an applicant must be a permanent guardian in order to receive benefits as a nonrelated guardian." The Director's decision also reflects the same erroneous interpretation. Moreover, these interpretations are based in part on a departmental regulation which is itself misleading to the extent it suggests that temporary guardians appointed pursuant to Probate Code section 2250 cannot apply for AFDC-FC benefits on behalf of their wards.

Turning to the essentials for mandamus, we have already determined that the Department's policy of granting AFDC-FC eligibility to permanent but not temporary nonrelated guardians is in violation of governing statutes. Accordingly, the Director, as the official charged with administering the laws

pertaining to the AFDC-FC program,[3] has a present duty to ensure that the Department's eligibility policy with respect to nonrelated guardians is corrected so that benefits are not withheld from otherwise eligible applicants because of this status feature.

As to the "beneficially interested" requirement, our Supreme Court has recognized an exception to the general rule where a public right is at stake and the purpose of the mandamus action is to procure enforcement of a public duty. In this situation, " ' "the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 674 P.2d 256].) There is no question that the proper determination of eligibility requirements for AFDC-FC benefits is a matter of public right and Timmons certainly is a citizen seeking to procure enforcement of a public duty. It follows that the public right/public duty exception to the requirement of beneficial interest applies here.

Finally, we observe that in her complaint Timmons invoked a patchwork of remedies, including injunctive and declaratory relief as well as ordinary mandamus. However, when relief is sought against a public entity, the availability of declaratory or injunctive relief does not necessarily defeat an action in mandate. (*Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 198 [205 Cal.Rptr. 433]; *California Teachers Assn.* v. *Nielsen* (1978) 87 Cal.App.3d 25, 28-29 [149 Cal.Rptr. 728]; *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 603 [241 Cal.Rptr. 283].) Here the trial court denied everything broader than Timmons's individual administrative mandate claim. She was entitled to relief for successfully challenging the guardianship eligibility policy as well. Declaratory and injunctive relief would be duplicative and more burdensome on remand than mandamus.

We reverse the judgment and remand with directions to issue a peremptory writ of mandate compelling the Director to instruct or otherwise communicate to the appropriate county agencies that temporary nonrelated guardians, otherwise eligible for AFDC-FC assistance, shall not be denied program

---

[3]Section 10553: "The director shall: . . . [¶] (b) Administer the laws pertaining to the administration of public social services . . . ."

benefits solely on the basis of their temporary status. Respondent is to bear costs on appeal.

Poché, J., and Perley, J., concurred.