[No. B194798. Second Dist., Div. Seven. Dec. 22, 2008.]

V.S. et al., Plaintiffs and Appellants, v.
CLIFF ALLENBY, as Interim Director, etc., Defendant and Respondent.

**COUNSEL**

The Alliance for Children's Rights, Laura Streimer, Natasha Frost; The Public Interest Law Project, Stephen Ronfeldt and Angela Schwartz for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Leslie P. McElroy and John Venegas, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**WOODS, J.—**

*SUMMARY*

The appellants successfully pursued an administrative and ordinary mandamus action for benefits beyond an initial 180-day period pursuant to the Los Angeles County Aid to Families with Dependent Children—Foster Care (AFDC-FC) program while their great nieces and nephew were in their care. They had also sought an ordinary writ of mandate compelling Cliff Allenby, interim director of the State Department of Social Services (DSS) at the time, to direct DSS's agents to take action pursuant to Welfare and Institutions Code section 16507.6 within 180 days so that others similarly situated would not lose entitlement to federal foster care funding for children in voluntary placement. Because we agree that the trial court should have expanded its ruling to mandate DSS compliance with the law, we reverse.

### *FACTUAL AND PROCEDURAL SYNOPSIS*

V.S. and J.S. are the great aunt and great uncle of siblings R.R., E.J. and C.J. On July 9, 2003, J.J. (the children's mother) and the Los Angeles County Department of Children and Family Services (DCFS) signed a voluntary placement agreement authorizing DCFS to place the children with the great aunt and great uncle for 180 days while the mother completed a drug rehabilitation program.[1] The children were found eligible and approved to receive federal financial participation funding.

On January 14, 2004, DCFS filed a petition requesting detention of the children after determining the mother had failed to complete the required rehabilitation program. That petition was granted.

In a notice of action dated April 2 and sent to the mother (but not the great aunt and great uncle), DCFS stated that the request for AFDC-FC payments for the children was denied effective April 1 because J.J. failed to meet all eligibility requirements for federal financial participation in AFDC-FC. The "specific requirement not met" was as follows: "There was no [j]udicial determination regarding the child[ren']s best interest within 180 days of the date of placement with regards to the voluntary agreement."

For a child placed with a relative, foster care payments may only be made if there is federal financial participation in the payment. (Welf. & Inst. Code,

---

[1] The children had been removed from the mother's home pursuant to allegations of abuse and neglect.

§ 11402, subd. (a).) Federal foster care benefits are limited to a maximum of 180 days unless there is a court finding made within this time period that continued placement is in the child's best interest. (42 U.S.C. § 672(e).) The placing agency "shall make any and all reasonable and necessary provisions for the care . . . and support of the minor . . . ." (Welf. & Inst. Code, § 16507.5, subd. (a).)

Welfare and Institutions Code section 16507.6 provides, in pertinent part, as follows:

"(a) If a minor has been voluntarily placed with the county welfare department subsequent to January 1, 1982, for out-of-home placement by his or her parents or guardians pursuant to this chapter and the minor has remained out of their physical custody for six consecutive months, the department shall do one of the following:

"(1) Return the minor to the physical custody of his or her parents or guardians.

"(2) Refer the minor to a licensed adoption agency for consideration of adoptive planning and receipt of a permanent relinquishment of care and custody rights from the parents pursuant to Section 8700 of the Family Code.

"(3) Apply for a petition pursuant to Section 332 and file the petition with the juvenile court to have the minor declared a dependent child of the court under Section 300.

"(4) Refer the minor placed pursuant to paragraph (2) of subdivision (a) of Section 16507.3 to an interagency administrative review board as may be required in federal regulations. One member of the board shall be a licensed mental health practitioner. The review board shall review the appropriateness and continued necessity of six additional months of voluntary placement, the extent of the compliance with the voluntary placement plan, and the adequacy of services to the family and child. If the minor cannot be returned home by the 12th month of voluntary placement services, the department shall proceed pursuant to paragraph (2) or (3).

"(5) Refer the minor placed pursuant to paragraph (1) of subdivision (a) of Section 16507.3 to an administrative review board as may be required in federal regulations and as described in subdivision (b) of Section 16503. If the minor cannot be returned home by the 12th month of voluntary placement services, the department shall proceed as described in paragraph (1) or (2)."

In May, the great aunt and great uncle contacted DCFS because they did not receive the anticipated payments, and then (representing themselves)

appealed the notice of action. DSS upheld the termination. The great aunt and great uncle then sought help from the Alliance for Children's Rights and requested a hearing; although timely, that request was denied by operation of law because DSS "was not able to act on it within 15 days after receiving it."

The great aunt and great uncle appealed the administration denial before the trial court, asserting three causes of action against DSS and its interim director at the time (Cliff Allenby). In their first cause of action, the great aunt and great uncle sought a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, challenging DSS's termination of foster care benefits for the children. In their second cause of action, on behalf of themselves and all others similarly situated, they sought an ordinary writ of mandate pursuant to Code of Civil Procedure section 1085, directing Allenby to order his agents (the county child welfare departments) to comply with the mandatory requirements of federal and state law with regard to voluntary placement agreements (more particularly in their case, to either return the children to the parent or file a petition to have them declared dependents of the court) prior to the expiration of the 180-day period. In their third cause of action, they sought declaratory relief regarding this asserted obligation.

Rejecting DSS's argument to the contrary, the trial court found that DSS was under a duty to ensure that action pursuant to Welfare and Institutions Code section 16507.6 was taken within the initial 180 days of the voluntary placement and entered judgment in favor of the great aunt and great uncle pursuant to Code of Civil Procedure sections 1094.5 and 1085, commanding DSS and its director to vacate and set aside its prior decision terminating foster care benefits and to issue a new decision requiring payment of benefits with prejudgment interest (until such time DSS and its director determined in their discretion and consistent with the law discontinuing payments was justified). The remaining claims were dismissed as moot.

The great aunt and great uncle appeal.

## DISCUSSION

In the view of the great aunt and great uncle, the trial court erred in finding their remaining causes of action moot in light of the relief granted to them as individuals. Although the trial court issued a writ in their favor individually, they say, the court erred in failing to grant the further relief they requested pursuant to Code of Civil Procedure section 1085 because DSS disputes its obligation to ensure its agents (the county child welfare agencies) take action within 180 days under Welfare and Institutions Code section 16507.6 and future children are likely to confront the same harm as the great aunt and great uncle.

■ For the reasons discussed in the analogous case of *Timmons v. McMahon* (1991) 235 Cal.App.3d 512 [286 Cal.Rptr. 620] (*Timmons*), we agree. As the *Timmons* court explained: "Code of Civil Procedure section 1085 authorizes a trial court to issue a writ of mandate 'to compel the performance of an act which the law specifically enjoins . . . .' Mandamus is brought upon verified petition of a beneficially interested party. (Code Civ. Proc., § 1086.) 'These terms translate into a two-sided requirement for mandamus: "[T]here must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty." ' [Citation.] Finally, this extraordinary writ 'must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.)" (*Timmons, supra*, 235 Cal.App.3d at p. 517.)

In its respondent's brief, DSS maintains that the trial court did not err and does not dispute the trial court's finding with respect to appellants' individual claim that DSS had a duty to ensure that its agents took one of the five actions listed in Welfare and Institutions Code section 16507.6 within 180 days of the children's placement with the great aunt and great uncle. Rather, it argues, the trial court did not specify *which* of these five actions DSS's agent was required to take and none would "necessarily" result in establishing eligibility for foster care benefits. Further, DSS says, Welfare and Institutions Code section 16507.6 is not an eligibility statute so requiring adherence to this statute could create confusion by implying adherence will guarantee federal eligibility when, in fact, it will not. In any event, DSS says, any statewide remedy should be sought from the Legislature.

■ "Turning to the essentials for mandamus" (*Timmons, supra*, 235 Cal.App.3d at p. 517), DSS has effectively conceded it has a ministerial duty (as the trial court found) to direct its agents (the county child welfare departments) to take one of the five actions listed in Welfare and Institutions Code section 16507.6 within the initial 180 days of placement and, as such, DSS's insistence it had no such duty was contrary to law. Further, "There is no question that the proper determination of eligibility requirements for AFDC-FC benefits is a matter of public right . . . ," and the great aunt and great uncle, as citizens seeking to procure enforcement of DSS's public duty in this regard, meet the "public right/public duty exception to the requirement of beneficial interest." (235 Cal.App.3d at p. 518.)   **(3)**   Finally, as in *Timmons*, the great aunt and great uncle sought ordinary mandamus, but the trial court denied everything broader than the individual claim of the great aunt and great uncle; they were entitled as well to relief for successfully challenging DSS's position it had no duty to ensure one of the actions listed in Welfare and Institutions Code section 16507.6 is taken within the initial 180 days of voluntary placement.

## *DISPOSITION*

The judgment is reversed and the matter is remanded to the trial court with directions to issue a peremptory writ of mandate compelling the director to instruct or otherwise communicate to its agents the duty to take action pursuant to Welfare and Institutions Code section 16507.6 within 180 days of the date of any voluntary placement agreement. Appellants are entitled to their costs of appeal.

Perluss, P. J., and Zelon, J., concurred.